AZALEA GARDEN BOARD & CARE, INC., Plaintiff v. MEREDITH DODSON VANHOY, Personal Representative of the Estate of Ricky C. Dodson, Deceased; LARRY S. GIBSON, NINA G. GIBSON, DANIEL W. TUTTLE; TIMOTHY D. SMITH; and HARVEY ALLEN, JR., Defendants

No. COA08-640

(Filed 21 April 2009)

1. Appeal and Error— summary judgment—interlocutory order—possibility of inconsistent verdicts

Appeal from a summary judgment was interlocutory but involved a substantial right where this lawsuit against the personal representative of an estate arose from the sale of a rest home, bankruptcy by the rest home, the failure of the closing, and actions against all of the buyers. A substantial right is affected because of the possibility of two trials on the same issues and inconsistent verdicts.

**2. Estates— claim against—no actual knowledge of claim—motion for summary judgment by estate—affidavits of personal representative—sufficiency**

Affidavits from the personal representative of an estate and an attorney that they lacked actual knowledge of a claimant and a claim are competent and sufficient to satisfy the initial burden of forecasting evidence on a motion for summary judgment. The estate cannot meet its burden of forecasting evidence that it lacked knowledge without offering affidavits from an interested party, and the proscription of N.C.G.S. § 1A-1, Rule 56(e) does not apply to a personal representative or estate's assertion that it lacked actual knowledge of a claimant and a claim.

**3. Estates— claim against—summary judgment motion—claimant's forecast of evidence—actual knowledge**

Azalea Garden's forecast of evidence in response to an estate's summary judgment motion on Azalea Garden's claim against it failed to create a genuine issue of material fact as to whether its identity and its claim were reasonably ascertainable by the personal representative of an estate within 75 days of her qualification and that the estate was required to provide Azalea Garden with individual notice.

Appeal by plaintiff from an order entered 7 March 2008 by Judge Ben F. Tennille in Davidson County Superior Court. Heard in the Court of Appeals 13 January 2009.

*Biesecker, Tripp, Sink & Fritts, L.L.P., by Joe E. Biesecker and Christopher A. Raines, for plaintiff-appellant.*

*Sharpless & Stavola, P.A., by Frederick K. Sharpless, for defendant-appellee Meredith Dodson Vanhoy.*

HUNTER, Robert C., Judge.

Plaintiff Azalea Garden Board & Care, Inc. ("plaintiff" or "Azalea Garden") appeals from an order entered 7 March 2008 by Judge Ben F. Tennille ("Judge Tennille") in Davidson County Superior Court granting summary judgment in favor of defendant Meredith Dodson Vanhoy ("Ms. Vanhoy") in her capacity as personal representative of her father's, Ricky C. Dodson ("Mr. Dodson"), estate (the "Estate") and dismissing plaintiff's breach of contract action based on: (1) N.C. Gen. Stat. § 28A-19-3 (2007), i.e., North Carolina's non-

claim statute; and (2) N.C. Gen. Stat. § 1-52(1) (2007), i.e., the three-year statute of limitations. The central issue in this appeal is whether the trial court erred in granting summary judgment for Ms. Vanhoy when she did not, pursuant to N.C. Gen. Stat. § 28A-14-1(b) (2007), "personally deliver or send by first class mail" to Azalea Garden a copy of the general notice of claims that she published in a local Watauga County newspaper pursuant to N.C. Gen. Stat. § 28A-14-1(a). As discussed *infra*, because we conclude that the forecast of evidence in this case does not create a genuine issue of material fact as to whether Azalea Garden and its claim against Mr. Dodson were "actually known" or "reasonably ascertain[able]" by Ms. Vanhoy, we conclude, as a matter of law, that she was not required to provide Azalea Garden with individual notice. N.C. Gen. Stat. § 28A-14-1(b). Consequently, after careful review, we affirm the trial court's order based on the application of the non-claim statute.[1]

## I. Background

On or about 6 May 1999, defendants Timothy Smith ("Mr. Smith") and Nina Gibson ("Ms. Gibson") executed an "Offer to Purchase Contract" (the "Contract") with Azalea Garden for the purchase of Brookside of Winston-Salem Rest Home ("Brookside"). David Wagner ("Mr. Wagner"), the President of Azalea Garden, signed the Contract on plaintiff's behalf underneath the seller heading; Mr. Smith and Ms. Gibson signed underneath the purchaser heading; and Mr. Dodson, who was an employee of The Interstate Companies of America, Inc. ("Interstate"), signed underneath the broker headings that were located underneath both the seller and purchaser headings. The Contract contained two "Addendum[s]." Mr. Smith and Ms. Gibson signed both Addendums as purchasers, and Mr. Wagner signed both as seller. The word "Seal" appears next to their respective signatures on Addendum B. Neither Addendum contains Mr. Dodson's signature.

On or about 13 July or 20 July 1999,[2] these same individuals signed an agreement modifying the Contract (the "Modification"). As with the Contract, Ms. Gibson and Mr. Smith signed under the purchaser heading; Mr. Wagner signed under the seller heading; and Mr.

---

1. Because we determine that summary judgment was properly granted in Ms. Vanhoy's favor based on the non-claim statute, we do not address the separate statute of limitations ground. Also, because the current, pertinent statutory provisions are substantively identical to those that were in effect at the time this cause of action arose, we cite to the most recent published versions.

2. The face of the Modification has two different dates. The date written on the seller's side is 13 July and the date written on the purchaser's side is 20 July.

AZALEA GARDEN BD. & CARE, INC. v. VANHOY

[196 N.C. App. 376 (2009)]

Dodson signed under both broker headings. The Modification stated that the closing was to occur on 31 August 1999. Both the Contract and the Modification required the purchasers to provide $25,000.00 in earnest money; this money was deposited with Interstate.

The face of both the Contract and the Modification indicate that Mr. Dodson signed merely as a broker. However, according to plaintiff, at some point subsequent to the execution of the Contract and Addendums, but prior to the execution of the Modification, Mr. Dodson asked plaintiff to release him from his broker status in order to join a group that planned to acquire and operate Brookside, and Mr. Wagner granted his request.

In 1999, Azalea Garden was in reorganization under a Chapter 11 bankruptcy filing and was purportedly in default on its obligations as to Brookside. The buyers declined to proceed with the purchase because they believed that Azalea Garden could not convey marketable title on the date of closing, an issue which plaintiff disputed and continues to dispute. The closing never occurred.

On 23 October 2000, Mr. Dodson died in Watauga County, which was his county of residence, and on 27 October 2000, his death certificate was filed with the Watauga County Register of Deeds. On 5 January 2001, Ms. Vanhoy qualified to administer her father's estate in Watauga County. Subsequent to this, she hired attorney Martha Peddrick ("Ms. Peddrick") to assist her with the administration of the Estate. Pursuant to N.C. Gen. Stat. § 28-14-1(a), Ms. Vanhoy published a general notice to creditors in The Watauga Democrat for four consecutive weeks on 7, 14, 21, and 28 March 2001 informing them to present their claims to the Estate by 8 June 2001 or that said notice would be pled as a bar to their recovery. It is undisputed that this notice fully complied with N.C. Gen. Stat. § 28A-14-1(a).

On 30 August 2002, Azalea Garden filed a lawsuit in Davidson County, naming Mr. Dodson, Ms. Gibson, Larry Gibson ("Mr. Gibson"), Danny Tuttle ("Mr. Tuttle"), Dr. Harvey Allen, Jr. ("Dr. Allen, Jr."), Interstate, and The Trillium Residential Systems, LLC ("Trillium") as defendants and asserting that these defendants breached the contract to purchase Brookside. Specifically, Azalea Garden asserted that Ms. Gibson and Mr. Tuttle[3] were "partners" with the other defendants and that they "were acting on behalf of these partners" when they signed the Contract and Modification. In addition, Azalea Garden asserted

---

3. As stated *supra*, the documents in the record indicate that Ms. Gibson and Mr. Smith signed the Contract and Modification, not Mr. Tuttle.

that it was entitled to the $25,000.00 in earnest money that had been given to Mr. Dodson and/or Interstate, that Dodson's and Interstate's failure to provide Azalea Garden with the earnest money constituted an unfair and deceptive trade practice, and that it was entitled to punitive damages against Dodson and Interstate. Azalea Garden never served the 30 August 2002 complaint on Mr. Dodson, who had died almost two years earlier.

After Azalea Garden's initial 30 August 2002 complaint and summons to Mr. Dodson were returned unserved, it obtained an alias and pluries summons directed to him on 26 November 2002. Following this, Azalea Garden did not obtain an additional alias and pluries summons to keep its original action against Mr. Dodson alive. In spite of this, on 3 June 2003, Azalea Garden filed a "Motion to Substitute Party" in Davidson County Superior Court seeking to substitute Ms. Vanhoy as a defendant in her capacity as representative of the Estate in its original action. In its motion, Azalea Garden claimed that when it filed its 30 August 2002 complaint, neither it nor any of its officers or agents "knew or could have reasonably known" either that Mr. Dodson had died or that it was required to present its claims to the personal representative of the Estate.

On 22 July 2003, Judge Mark E. Klass entered an "Order Substituting Personal Representative as Party Defendant"; Azalea Garden filed an "Amendment to Complaint" substituting Ms. Vanhoy as a party-defendant in her capacity as personal representative of the Estate in the original action; and a summons was issued to Ms. Vanhoy. The 22 July 2003 summons was returned unserved; however, an alias and pluries summons was issued to Ms. Vanhoy on 27 August 2003. In September 2005, plaintiff voluntarily dismissed its original case without prejudice.

On 21 March 2006, Azalea Garden filed the instant breach of contract action against Ms. Vanhoy, as personal representative of the Estate; Mr. Smith; Mr. Tuttle; Mr. Gibson; Ms. Gibson; and Dr. Allen, Jr. pertaining to the failed Brookside transaction[4]. Specifically, Azalea Garden asserted that the named defendants had formed "a joint venture for the purpose of acquiring and operating a rest home for profit [and] . . . held themselves out to plaintiff as being members or participants in a joint venture[.]" Azalea Garden further asserted that Ms. Gibson and Mr. Smith had

---

4. Unlike the 2002 complaint, the 2006 complaint asserts no claim regarding and makes no reference to the earnest money.

executed the Offer to Purchase Contract and Modification on their own behalf and in their capacities as co-adventurers with defendants and in the course and scope and furtherance of the joint venture or apparent joint venture. As such, all defendants, as members of the joint venture or apparent joint venture or as persons who ratified the actions of [Ms.] Gibson and [Mr.] Smith and the contract, were bound by the terms, conditions and obligations of the Offer to Purchase Contract and Modification, including, but not limited to, the purchase of Brookside from plaintiff.

By order dated 31 May 2007, the case was designated as a complex business case and assigned to Judge Tennille. On 13 August 2007, Ms. Vanhoy filed a motion for summary judgment, along with, *inter alia*: (1) copies of the Contract and the Modification; (2) her affidavit; and (3) an affidavit from Ms. Peddrick. Ms. Vanhoy's affidavit stated, *inter alia*, that: (1) the facts contained in her affidavit were based on her personal knowledge; (2) "[a]t the time [she] caused the general Notice to Creditors to be published, [she] did not know that Azalea Garden . . . allegedly had a claim against [her] father's estate"; and (3) "[a]t the time [she] caused the general Notice to Creditors to be published, [she] had no way of ascertaining that Azalea Garden . . . had an alleged claim against [her] father's estate." Ms. Peddrick's affidavit stated, *inter alia*, that: (1) the facts contained in her affidavit were based on her personal knowledge; (2) she "had not received notice of Azalea Garden['s] . . . attempt to substitute the Estate" prior to "the week of" 25 August 2003; and (3) she "had not seen, nor was [she] aware of the existence of, the Complaint or any other document setting forth Azalea Garden['s] . . . claims against the Estate before August, 2003."

In opposition to Ms. Vanhoy's motion, Azalea Garden produced, *inter alia*: (1) numerous pieces of correspondence regarding the Brookside transaction which were purportedly contained in Interstate's files, including several letters from Azalea Garden demanding specific performance as to the Brookside transaction and delivery of the $25,000.00 in earnest money; (2) portions of a deposition from Interstate's president, Dennis Maddox ("Mr. Maddox"), in which Mr. Maddox stated that a representative of the Estate had met with him for the purpose of entering into a "Stock Purchase Agreement" which provided that Mr. Maddox would indemnify the Estate against liabilities arising out of Mr. Dodson's employment; (3) portions of a deposition from James Keen ("Mr. Keen"), the banker who had handled the anticipated financing for the Brookside trans-

action, in which Mr. Keen stated that a representative of the Estate had met with him regarding an unrelated matter, that he had documents in an unrelated file pertaining to the Brookside transaction, and that he believed Mr. Dodson was one of the potential purchasers; and (4) a letter dated 8 September 1999, purportedly sent from Mr. Smith to Mr. Dodson at Interstate, in which Mr. Smith stated that he had "decided not to become a partner with [Mr. Dodson], [Mr.] Tuttle, and . . . [the] Gibson[s]" regarding Azalea Garden and that he wished Mr. Dodson and the others "the upmost [sic] success with Azalea Gardens [sic]."

A hearing regarding Ms. Vanhoy's motion was held on 27 November 2007. At this hearing, the parties' dispute regarding the non-claim statute largely centered on whether Azalea Garden and its claim were "actually known or . . . reasonably ascertain[able] by [Ms. Vanhoy] within 75 days" of her becoming personal representative of the Estate, and thus whether she should have provided Azalea Garden with individual notice. N.C. Gen. Stat. § 28A-14-1(b).

Ms. Vanhoy acknowledged that as the party moving for summary judgment, she had the burden of raising the non-claim statute as a defense and of producing a sufficient forecast of evidence to support her assertion that Azalea Garden's claim was barred by the non-claim statute. Ms. Vanhoy contended that she had met this burden by showing: (1) the latest possible date on which Azalea Garden's claim arose (14 September 1999); (2) the date of Mr. Dodson's death and his county of residence (23 October 2000); (3) the date she qualified as personal representative of the Estate (5 January 2001); (4) that the general notice to creditors had been properly published in accordance with section 28A-14-1(a); (5) the bar date contained in the general notice (8 June 2001); and (6) that Azalea Garden did not serve her with its claim until well outside this date (27 August 2003). Ms. Vanhoy further argued that once she had met her burden, Azalea Garden was obligated to produce evidence setting forth specific facts that raised a genuine issue of material fact as to whether she knew, or could have reasonably ascertained of Azalea Garden and its claim within seventy-five days of her qualifying as personal representative. She contended that Azalea Garden had not offered a sufficient forecast of evidence to this effect, that consequently Azalea Garden was not entitled to individual notice, and that Azalea Garden's claim was therefore barred pursuant to section 28A-19-3 based on its failure to present its claim before the 8 June 2001 time bar contained in the general notice that she had published.

Azalea Garden acknowledged that it had failed to present its claim to Ms. Vanhoy within the time bar contained in the general notice that she had published in The Watauga County Democrat and did not dispute that this notice complied with N.C. Gen. Stat. § 28A-14-1(a). However, Azalea Garden argued that Ms. Vanhoy was barred from utilizing the non-claim statute as a defense to its breach of contract claim because: (1) Azalea Garden and its claim were known or reasonably ascertainable by Ms. Vanhoy, thus entitling it to individual notice pursuant to section 28A-14-1(b); and (2) Ms. Vanhoy failed to provide it with individual notice. As to who had the burden of establishing whether or not Azalea Garden and its claim were known or reasonably ascertainable, i.e., whether Azalea Garden should have been provided with individual notice pursuant to N.C. Gen. Stat. § 28A-14-1(b), Azalea Garden asserted that it was on Ms. Vanhoy because she was the representative of the Estate and the party moving for summary judgment. In this respect, Azalea Garden objected to the portion of Ms. Vanhoy's affidavit which stated that she " 'had no way of ascertaining that Azalea Garden . . . had an alleged claim against [her] father's estate[,]' " and to the portion of Ms. Peddrick's affidavit which stated that she " 'had not received notice of Azalea Garden['s] . . . attempts to substitute the estate in this lawsuit' " prior to the week of 25 August 2003. Specifically, Azalea Garden asserted that these statements violated N.C.R. Civ. P. 56(e) because they were legal conclusions that failed to set forth facts that would be admissible into evidence and consequently, that these statements could not be considered by the court in support of Ms. Vanoy's and the Estate's lack of notice as to Azalea Garden's identity or its claim. Furthermore, Azalea Garden claimed that, in order to meet her burden of forecasting evidence on this issue, Ms. Vanhoy had to affirmatively provide what steps she and Ms. Peddrick undertook to uncover Azalea Garden's identity and claim and to show that these steps reflected reasonable diligence, which she had failed to do. Finally, in the alternative, Azalea Garden asserted that, even if it had the burden to show that it was entitled to individual notice pursuant to N.C. Gen. Stat. § 28A-14-1(b), it had produced sufficient evidence to establish that a genuine issue of material fact existed as to whether its identity and its breach of contract claim were actually known or could have been reasonably ascertained by Ms. Vanhoy, and as a result, that the grant of summary judgment in Ms. Vanhoy's favor was error.

On 7 March 2008, Judge Tennille entered an extensive and detailed order granting summary judgment in Ms. Vanhoy's favor and

dismissing Azalea Garden's breach of contract claim based on the non-claim statute and the three-year statute of limitations respectively. As to the non-claim statute, Judge Tennille stated:

> Based on the . . . undisputed facts, the Court concludes that Defendant Vanhoy neither knew nor should have known that Plaintiff had an unsatisfied claim against Mr. Dodson. Having no knowledge of even a potential unsatisfied claim, she was under no duty to conduct an investigation nor was she required to send direct notice to Plaintiff. Her lack of knowledge stands in stark contrast to the actual knowledge of the representative in *[In re Estate of] Mullins*.
>
> The Court finds that Defendant Vanhoy complied with North Carolina General Statute section 28A-14-1 and that Plaintiff did not file the current claim against the estate of Mr. Dodson in accordance with North Carolina General Statute section 28A-19-3. These findings are sufficient to grant Defendant Vanhoy's Motion for Summary Judgment.

Judge Tennille also noted, *inter alia*, that: (1) once a personal representative establishes that she has properly published notice in accordance with N.C. Gen. Stat. § 28A-14-1(a), "the burden falls on a claimant to prove direct personal notice was required", i.e., that its identity and claim were known or reasonably ascertainable within 75 days of the qualification of the personal representative; (2) he only considered "the factual assertions" contained in Ms. Vanhoy's and Ms. Peddrick's affidavits and not the legal conclusions; and (3) "[t]he absence of actual knowledge [was] uncontroverted."[5] This appeal followed.

## II. Analysis

### A. Interlocutory Order

[1] Azalea Garden acknowledges that Judge Tennille's order is interlocutory,[6] but claims we should review the merits of the instant appeal because it affects "a substantial right" pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d) (2007). Specifically, Azalea Garden

---

5. In fact, Azalea Garden specifically conceded that it did not have any "actual-knowledge evidence."

6. Subsequent to the filing of the Notice of Appeal in the instant case, Azalea Garden voluntarily dismissed with prejudice its breach of contract claim against Mr. Smith. However, with the exception of Mr. Smith and Ms. Vanhoy, it appears that Azalea Garden's breach of contract claim against the other named defendants remains.

asserts that if we do not review this appeal, it "will lose a substantial right to have common issues relating to the liability of multiple defendants tried at one time."

"[O]ur Supreme Court [has] stated that ' "the right to avoid the possibility of two trials on the same issues can be such a substantial right." ' "*Josyln v. Blanchard*, 149 N.C. App. 625, 627, 561 S.E.2d 534, 535-36 (2002) (quoting *Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E.2d 593, 595 (1982)).

> "This general proposition is based on the following rationale: when common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn 'creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.' "

*Id.*, 561 S.E.2d at 536 (quoting *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989)). In addition, "[t]he 'right to have the issue of liability as to all parties tried by the same jury' and the avoidance of inconsistent verdicts in separate trials have been held by our Supreme Court to be substantial rights." *Vera v. Five Crow Promotions, Inc.*, 130 N.C. App. 645, 648, 503 S.E.2d 692, 695 (1998) (quoting *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408-09 (1982)).

We agree with plaintiff that the instant appeal affects a substantial right because of the possibility that two trials may occur on the same issues as well as the possibility of inconsistent verdicts. Here, Judge Tennille granted summary judgment in Ms. Vanhoy's favor based solely on the lack of timeliness of Azalea Garden's breach of contract claim without addressing the underlying merits of the claim itself. Should Azalea Garden be successful in the instant appeal, the issue remains as to whether Mr. Dodson and the other named defendants breached the contract to purchase Brookside. Two key issues in that determination are whether Azalea Garden could have delivered marketable title to the Brookside facility at closing and whether defendants had joined in a joint venture for its purchase. The parties dispute both of these issues, which involve the consideration and resolution of a common set of facts. Consequently, we address the merits of Azalea Garden's appeal.

### B. Standard of Review

When ruling on a motion for summary judgment, the evidence must be considered in the light most favorable to the nonmoving party. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992). Summary judgment should only be granted if the moving party demonstrates there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Id.* at 62, 414 S.E.2d at 341. A defendant may show she is entitled to summary judgment by: " '(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim.' " *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, (quoting *Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 6, 330 S.E.2d 242, 247 (1985), *rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986)), *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000). Our standard of review is *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

### C. Non-claim Statute

[2] On appeal, both parties essentially raise the same arguments they asserted below. As discussed *infra*, we essentially agree with Ms. Vanhoy, particularly in light of this Court's decision in *Mullins*. *In re Estate of Mullins* 182 N.C. App. 667, 643 S.E.2d 599, *disc. review denied*, 361 N.C. 693, 652 S.E.2d 262-63 (2007). Prior to discussing *Mullins*, we first address the parties' arguments regarding their respective burdens of forecasting evidence on the individual notice issue.

In North Carolina, when a claim is brought against a decedent, there are two statutory mechanisms that limit the time in which a claimant can bring the suit against the decedent's estate: (1) the non-claim statute (section 28A-19-3) and (2) the applicable statute of limitations. "A cause of action may be barred by either or both of these statutes.".*Ragan v. Hill*, 337 N.C. 667, 671, 447 S.E.2d 371, 374 (1994). Seeking to "clarify the nature and operation of section 28A-19-3[,]" our Supreme Court has stated:

This section is the type of statute that is commonly referred to as a "non-claim statute." Though similar to a statute of limitations, it serves a different purpose and operates independently of the statute of limitations that may also be applicable to a given claim. Section 28A-19-3 is a part of Chapter 28A . . . [which was] enacted . . . to provide faster and less costly procedures for administering estates. The time limitations prescribed. by this section allow the personal representative to identify all claims to be made against the assets of the estate early on in the process of administering the estate. The statute also promotes the early and final resolution of claims by barring those not presented within the identified period of time.

*Id.* N.C. Gen. Stat. § 28A-19-3(a) provides in pertinent part:

All claims against a decedent's estate which arose before [his] death[,] . . . which are not presented to the personal representative or collector pursuant to G.S. 28A-19-1 by the date specified in the general notice to creditors as provided for in G.S. 28A-14-1(a) or in those cases requiring the delivery or mailing of notice as provided for in G.S. 28A- 14-1(b), within 90 days after the date of the delivery or mailing of the notice if the expiration of said 90-day period is later than the date specified in the general notice to creditors, are forever barred against the estate, the personal representative, the collector, the heirs, and the devisees of the decedent.

Hence, in order for a claimant to avoid having its claim barred by the non-claim statute, it must: (1) present its claim to the decedent's estate in the form and manner mandated by section 28-19-1 (2007); and (2) do so within the time period stated in the general notice that an estate is required to publish pursuant to N.C. Gen. Stat. § 28A-14-1(a), or if N.C. Gen. Stat. § 28A-14-1(b) applies and the claimant is entitled to individual notice, within ninety days of the delivery or mailing of said notice if said period expires subsequent to the time bar contained in the published notice.

As stated *supra*, it is undisputed that Azalea Garden did not present its breach of contract claim to Ms. Vanhoy and the Estate until well outside the 8 June 2001 time bar contained in the published notice. However, Azalea Garden contends its failure to present its breach of contract claim within the time period provided in the published notice is of no import because it was entitled to individual

notice under N.C. Gen. Stat. § 28A-14-1(b) and it is undisputed that Ms. Vanhoy did not provide Azalea Garden with individual notice.

N.C. Gen. Stat. § 28A-14-1 provides in pertinent part:

(a) Every personal representative and collector after the granting of letters shall notify all persons, firms and corporations having claims against the decedent to present the same to such personal representative or collector, on or before a day to be named in such notice, which day must be at least three months from the day of the first publication or posting of such notice. The notice shall set out a mailing address for the personal representative or collector. The notice shall be published once a week for four consecutive weeks in a newspaper qualified to publish legal advertisements, if any such newspaper is published in the county. . . .

(b) Prior to filing the proof of notice required by G.S. 28A-14-2, every personal representative and collector shall personally deliver or send by first class mail to the last known address a copy of the notice required by subsection (a) of this section to all persons, firms, and corporations having unsatisfied claims against the decedent who are actually known or can be reasonably ascertained by the personal representative or collector within 75 days after the granting of letters. . . .

In other words, subsection (a) mandates that the general notice must always be published in order to inform all claimants, whether known or unknown, to present their claims to the estate, and subsection (b) mandates that known claimants or those claimants who are reasonably ascertainable by the personal representative or collector within 75 days must be individually provided with the published notice mandated by subsection (a).

Our appellate case law is clear that before an estate can avail itself of the non-claim statute as a defense, it must demonstrate that it complied with N.C. Gen. Stat. § 28A-14-1(a). In *Anderson v. Gooding*, 300 N.C. 170, 173, 265 S.E.2d 201, 203-04 (1980), our Supreme Court considered whether an executor's publication of a general notice to creditors that failed to name a bar date for the bringing of claims against the estate was sufficient "to start the running of" the non-claim statute. The Court held that it was not, stating:

When an administrator or executor pleads G.S. 28A-19-3(a) as a defense against claims presented against the estate, he

must establish the fact that he did advertise as required by G.S. 28A-14-1. Failure of such proof causes failure of the defense made under G.S. 28A-19-3(a). [Where] the proofs do not sustain the defense . . . the limiting statute is no bar to the suit. The time limitations for presentation of claims provided in G.S. 28-19-3(a) will not aid an executor or administrator who fails to observe its requirements.

*Id.* at 174, 265 S.E.2d at 204 (citations omitted); *see also Lee v. Keck,* 68 N.C. App. 320, 329, 315 S.E.2d 323, 329-30 (1984) (holding that where a defendant moves for summary judgment and asserts section 28A-19-3(a) as a bar, the defendant bears "the burden of showing that [she] ha[s] a complete defense as a matter of law[,]" and the defendant fails to meet this burden where the record is silent as to whether the general notice to creditors was published).

However, while it is clear that a defendant-personal representative has the burden of demonstrating that she properly published the general notice required by N.C. Gen. Stat. § 28A-14-1(a), there is no North Carolina case law addressing whether a personal representative also has the burden of forecasting evidence to support her assertion that a particular claimant and claim were not actually known or reasonably ascertainable by her within 75 days, i.e., that said claimant was not entitled to individual notice pursuant to N.C. Gen. Stat. § 28A-14-1(b). As noted *supra,* Judge Tennille concluded that once an estate establishes that it properly complied with the publication requirement and that the claimant failed to present its claim before the time bar set out in the published notice, the burden then shifts to the claimant to produce a forecast of evidence based on specific facts which demonstrates that a genuine issue of material fact exists as to whether it was entitled to individual notice pursuant to N.C. Gen. Stat. § 28A-14-1(b). As discussed *infra,* we essentially agree.

### i. Actual Knowledge

At the outset, we note that even assuming, *arguendo,* that a personal representative/estate has the initial burden of forecasting evidence to support its assertion that it lacked actual knowledge of a claimant's identity and claim, we fail to see how an estate could meet this burden without offering affidavits from an "interested" party stating that she lacks actual knowledge. Hence, while we agree with Azalea Garden and Judge Tennille that certain legal conclusions contained in Ms. Vanhoy's and Ms. Peddrick's affidavits technically cannot be considered by the court due to N.C.R. Civ. P. 56(e), we do not

believe this proscription applies to a personal representative's/ estate's assertion that it lacked actual knowledge of a claimant and its claim. Indeed, were we to accept Azalea Garden's argument, we fail to see how an estate would ever be able to support its lack of actual knowledge when moving for summary judgment based on the non-claim statute. In effect, this would undermine the central purpose of chapter 28A, which was "designed to encourage speedy presentation of claims and to expedite the administration, and ultimately, the clos-ing, of estates." *In re Estate of English*, 83 N.C. App. 359, 365, 350 S.E.2d 379, 383 (1986), *disc. review denied*, 319 N.C. 403, 354 S.E.2d 711-12 (1987). As such, assuming, *arguendo*, that when a personal representative of an estate moves for summary judgment based on the non-claim statute, she has the initial burden of forecasting evi-dence to demonstrate her lack of actual knowledge, we believe that affidavits from the personal representative and the attorney she hired to help administer the estate which state that these individuals lacked actual knowledge are competent and sufficient to satisfy this burden.

ii. Reasonably Ascertainable Claimant and Claim

**[3]** At the outset, we note that with regard to the issue of whether a particular claimant and claim are reasonably ascertainable within the time frame contained in N.C. Gen. Stat. § 28A-14-1(b), we tend to agree with Azalea Garden that the statements contained in Ms. Vanhoy's and Ms. Peddrick's affidavits appear to essentially be bare legal conclusions that should not be considered pursuant to N.C.R. Civ. P. 56(e). In addition, it appears that the individual notice require-ment contained in subsection (b) was designed to strike a balance between being fair to certain claimants whose identities and claims could be ascertained without imposing an overly onerous burden on the estate and allowing the personal representative to efficiently administer and close the estate with finality. That being said, we believe that imposing the initial burden on the claimant to produce a forecast of evidence demonstrating that a material issue of fact exists as to whether its identity and its claim were reasonably ascertainable is a more sensible and logical approach to arrive at this balance with-out imposing an overly onerous burden on either party.

In this respect, first, we note that if this burden was imposed on the personal representative of the estate, she would be obligated to establish a negative. Such approach does not possess much logical appeal. In addition, even if a personal representative affirmatively details in her affidavit all of the actions she has undertaken to admin-

ister and close the estate, a claimant would still be afforded the opportunity to produce a forecast of evidence showing that the estate should have looked elsewhere or done more to try and ascertain its identity and its claim, and that had the estate done so, a material issue of fact exists as to whether the claimant's identity and claim were reasonably ascertainable. In fact, unlike with a personal representative, who may or may not be aware of the decedent's dealings with a particular claimant, the claimant should know: (1) of its dealings with the decedent; and (2) what documents or conversations it believes would have reasonably alerted the estate of its identity and claims. This is especially true under the facts of the instant case. Here, Azalea Garden's claim is not based on the provision of personal services to Mr. Dodson, such as where a hospital had provided medical services to a decedent and the Estate would likely receive a bill or be on notice of said services. Rather, Azalea Garden asserts that Mr. Dodson breached the contract to purchase Brookside because he had entered into a joint venture with the other named defendants even though Mr. Dodson only signed as a broker and Azalea Garden could not locate or produce any written agreement releasing Mr. Dodson from his broker status or establishing a joint venture between him and the other named defendants, which might have alerted the Estate of this claim.

Accordingly, we hold that in the instant case, Ms. Vanhoy produced a sufficient forecast of evidence in support of her summary judgment motion to shift the burden to Azalea Garden to produce a forecast of evidence setting forth specific facts, as opposed to mere allegations, establishing that a genuine issue of material fact exists as to whether its identity and claim were reasonably ascertainable, i.e., that it was entitled to individual notice. *See, e.g., Beck v. City of Durham*, 154 N.C. App. 221, 229, 573 S.E.2d 183, 189 (2002) ("Once defendants, as the moving party, ma[ke] and support[] their motion for summary judgment, the burden . . . shift[s] to plaintiff, as the nonmoving party, to introduce evidence in opposition to the motion that set[s] forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)).

In support of its argument that it met this burden, Azalea Garden highlights the evidence we noted *supra*. We disagree with Azalea Garden that its forecast of evidence adequately sets forth specific facts showing that a material issue of fact exists as to whether Ms. Vanhoy and the Estate could have reasonably ascertained its identity and its claim, particularly in light of this Court's opinion in *Mullins*.

In *Mullins*, the petitioners also argued that they were entitled to personal notice pursuant to N.C. Gen. Stat. § 28A-14-1(b). *In re Estate of Mullins* 182 N.C. App. at ——, 643 S.E.2d at 603. In support of their argument, the petitioners noted that: (1) they had filed a law suit against the testator in December 2000[7]; (2) they had entered into a tolling agreement as to this lawsuit with the testator and the respondent on 1 June 2002[8]; (3) on 12 May 2004, after negotiations had broken down, the petitioners' attorney told the testator and the respondent that petitioners intended to sue them; (4) on 21 May 2004, petitioners sent a demand letter to the attorney representing both the testator and the respondent informing them that they would bring suit if their demands were not met; (5) on 26 May 2004, the day after the testator died, petitioners filed a declaratory judgment action against him and the respondent; (6) petitioners informed the attorney for the testator and the respondent that they would delay serving the 26 May 2004 lawsuit; and (7) petitioners engaged in settlement discussions with said attorney in late 2004. *Id.* at ,—— , —— 643 S.E.2d at 600, 603. Taking all of these facts into consideration, this Court held:

> The record is clear that respondent did not have knowledge of any unsatisfied claim against testator or the Estate. Petitioners had settled and dismissed their December 2000 lawsuit against testator without prejudice. Petitioners never served the 26 May 2004 lawsuit. Nothing in the record indicates petitioners filed a claim against the Estate prior to its closing on 12 January 2005. Nothing in the record before us indicates respondent was on notice of any "unsatisfied claim" by petitioners. Petitioners were not entitled to personal notice under N.C. Gen. Stat. § 28A-14-1(b).

*Id.* at 673, 643 S.E.2d at 603 (citation omitted).

While Azalea Garden tries to differentiate *Mullins* from the instant case based on the standard of review, we find this argument unconvincing. First, in *Mullins* this Court explicitly stated that it reviewed questions of law *de novo. Id.* at ——, 643 S.E.2d at 602. Next, though the Court in *Mullins* was not reviewing a grant of summary judgment, even when the evidence here is considered in the light most favorable to Azalea Garden, its forecast of evidence pales in

---

7. The testator in *Mullins* died on 25 May 2004.

8. The respondent became the executor of the estate subsequent to the testator's death on 25 May 2004.

comparison to the facts that this Court deemed insufficient to require individual notice in *Mullins*.

Here, there are no allegations that Ms. Vanhoy or the Estate had any dealings with Azalea Garden or an attorney acting on its behalf. Nor are there any allegations that any materials regarding Azalea Garden or its purported claim were contained in any of Mr. Dodson's personal files. In addition, the demand letters that were purportedly contained in Interstate's files do not state that Azalea Garden planned to file suit against Mr. Dodson either in a personal capacity or otherwise, or for that matter, against any of the named defendants. Furthermore, nothing on the face of the Contract or the Modification indicate that Mr. Dodson was involved as anything other than a broker, and Azalea Garden did not tender any evidence of a written agreement to support its théory that Mr. Dodson had abdicated his role as broker to enter into a partnership agreement with any of the other named defendants which might have arguably put the Estate on notice that he was engaged in a joint venture in a personal capacity or that an unsatisfied breach of contract claim existed. As such, like Judge Tennille, we do not believe that Ms. Vanhoy had the "affirmative duty to shift [sic] through all the work files accumulated during Mr. Dodson's career to determine whether any one of them could possibly be the basis of an unsatisfied claim that could be asserted against the estate."

In addition, there is no evidence that the Estate's respective meetings and conversations with Mr. Maddox and Mr. Keen, both of which occurred long before Azalea Garden filed suit, pertained to anything other than the routine closing of the Estate. Nor is there any evidence that Mr. Maddox or Mr. Keen had any knowledge of the existence of Azalea Garden's breach of contract claim at this time òr that said meetings/conversations would have put the Estate on notice as to any unsatisfied claim against the Estate or against Mr. Dodson personally. Finally, even though Mr. Keen stated in his deposition that he believed that Mr. Dodson was one of the potential purchasers of Brookside and Mr. Smith's letter likewise appears to indicate his belief that Mr. Dodson was a member of the group who planned to purchase Brookside, this evidence is not sufficient to create a genuine issue of material fact as to whether Azalea Garden's breach of contract claim, which was not filed until 30 August 2002, was reasonably ascertainable by the Estate.

In sum, we conclude that Azalea Garden's forecast of evidence failed to create a genuine issue of material fact as to whether its iden-

tity and its breach of contract claim were reasonably ascertainable by Ms. Vanhoy within 75 days of her qualification as personal representative of the Estate, i.e., that the Estate was required to provide Azalea Garden with individual notice, especially given this Court's analysis and conclusion in *Mullins*.

## III. Conclusion

Given that: (1) it is undisputed that the Estate properly published the general notice to creditors in accordance with N.C. Gen. Stat. § 28A-14-1(a) and that Azalea Garden did not present its claim before 8 June 2001; and (2) that Azalea Garden failed to produce a sufficient forecast of evidence consisting of specific facts which show that a material issue of fact exists as to whether Azalea Garden's identity and claim were reasonably ascertainable and that it was entitled to individual notice under N.C. Gen. Stat. § 28A-14-1(b), we conclude, as a matter of law, that Azalea Garden's breach of contract claim against Ms. Vanhoy and the Estate is barred by N.C. Gen. Stat. § 28A-19-3. Accordingly, we affirm Judge Tennille's order granting summary judgment in Ms. Vanhoy's favor on this ground.

Affirmed.

Judges WYNN and ERVIN concur.